## Huff, et al. v. Conley, et al.

(Decided January 24, 1911.)

Appeal from Magoffin Circuit Court.

Deeds—Undue Influence in Execution—Evidence.—In an action to set aside a deed because of undue influence and want of consideration, the evidence examined and held, That Conley, who executed it, was not capable of executing the deed, and that he acted under duress at the time of its pretended execution.

McGUIRE & McGUIRE, W. W. McGUIRE, and R. H. COOPER, for appellants.

AUGUSTUS ARNETT and JOHN W. HOWARD, for appellees.

Opinion of the Court by Judge Nunn—Reversing.

One James Conley, now deceased, was a resident of Magoffin county, Kentucky, an old man and a pensioner. He owned a tract of land consisting of about one hundred acres. Appellees' proof fixed the value of the land at $1,000 or $1,200 and appellants' proof showed it to be $2,000 or $2,500. The real value of the land appears to be $1,600 or $1,800. On June 29, 1907, James Conley and his wife, Cynthia Conley, made a deed conveying the land to appellees, John, William and Dean Conley, for the recited consideration of $15, in hand paid, and for love and affection and other valuable considerations. James Conley and wife reserved the use of the land for their lives. James Conley died in the spring of 1908.

This action was brought by the four daughters, who had married, against the three sons who took the title to the land under the deed referred to. They claimed that the deed was executed without consideration; that the old gentleman was so frail in body and mind that he was not capable of making the deed, which fact appellees knew; and that the deed was caused to be made by the undue influence of the boys and Cynthia Conley. These allegations were denied; and upon a trial the

lower court found that the deed was genuine, from which judgment this appeal is prosecuted.

It appears from the evidence that John Conley had lived in Virginia about eight years and had seldom visited his parents, and that William Conley had resided in Virginia about four years and had been to his father's house but twice during that time. Dean Conley resided upon the farm and just across a creek from his father's home. The first attempt to have James Conley execute a deed was made while William Conley was visiting his father's house and he was named in the deed as the sole vendee. One G. W. Hoskins, a deputy county court clerk and a neighbor of James Conley, was called to Conley's house after supper, and when he arrived there William Conley handed him the deed in which he was named as vendee, and asked him to have the old gentleman sign and acknowledge it. Hoskins took the deed, ascertained the purpose of it and found that the old gentleman did not want to execute it, so he advised against it and the deed was not made. The deed that was executed to the three boys was not read to James Conley, as William Conley, who presented it, said that his father understood it. Hoskins further testified that when he took James Conley's acknowledgment to the deed he merely nodded his head and said nothing. The evidence shows no reason why James Conley sought to make a difference between his children in the division of his property. His daughters had never mistreated him, so far as the record shows. Two of his boys had left him and gone to another State, and it does not appear from the record that they had ever done anything for him; and he had given his other son, Dean, a home upon the place. There is no reason whatever shown why James Conley should have made this conveyance. The consideration is nominal only, except love and affection, but so far as the evidence shows he had as much love and affection for his daughters as he did for his sons. Dean Conley gave his deposition for appellants and testified that his father was not capable of making the deed at the date thereof. His testimony was given, however, after he had sold his interest to William Conley for $400, therefore we give it but little credit. There is other evidence, however, which shows James Conley was frail in both body and mind at the time he signed and acknowledged the deed and that Cynthia Conley, his wife, used undue influence over him. This evidence authorizes us to say that the writing is not James Conley's act and

deed. It is true, the evidence shows that James Conley
was the guardian of some children and that a short time
before his death he made a settlement of his accounts
as such, but the witness Hoskins testified that he made
the settlement for Conley and with but little help from
him. Taking the evidence as a whole, we are constrained
to the belief that James Conley was not capable of exe-
cuting the deed, and that he acted under duress at the
time the pretended execution was made.

William Conley, who purchased Dean's interest, owns
two-sevenths and the other heirs one-seventh each of
the land.

For these reasons, the judgment of the lower court is
reversed and remanded for further proceedings con-
sistent herewith.